DAVID J. MICLEAN (SBN 115098)
dmiclean@micleangleason.com
DANIELLE M. MIHALKANIN (SBN 271442)
dmihalkanin@micleangleason.com
MICLEAN GLEASON LLP
411 Borel Avenue, Suite 310
San Mateo, CA  94402
Telephone:  (650) 684-1181
Facsimile:  (650) 684-1182

Attorneys for Plaintiff
Giselle Turchet

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GISELLE TURCHET, an individual; and TURCHET TRANSPORT, INC., a California corporation doing business as MAYFIELD TRANSPORT;<br><br>       Plaintiffs,<br><br>v.<br><br>RICK MAYFIELD, an individual; KATIE MAYFIELD, an individual; and MAYFIELD TRANSPORT LLC,<br><br>      Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br><br>**(1) BREACH OF CONTRACT;**<br>**(2) UNFAIR COMPETITION UNDER 15 U.S.C § 1125(A);**<br>**(3) UNFAIR COMPETITION UNDER CAL. BUS. PROF. CODE § 17200 ET SEQ.;**<br>**(4) INTERFERENCE WITH CONTRACTUAL RELATIONS;**<br>**(5) INTEFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**<br>**(6) MISREPRESENTATION;**<br>**(7) BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING;**<br>**(8) SPECIFIC PERFORMANCE**<br>**(9) RESCISSION AND REIMBURSEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

This is an action brought by Plaintiffs Giselle Turchet ("Turchet"), owner of Turchet Transport, Inc., doing business as Mayfield Transport ("Mayfield Transport CA"), and Mayfield Transport CA (collectively, the "Plaintiffs") against Defendants Rick and Katie Mayfield (the "Mayfields"), Mayfield Transport LLC, an Oregon limited liability company ("Mayfield Transport Oregon"), and Does 1-10 (collectively, the "Defendants"), for breach of contract, false designation of origin under 15 U.S.C. § 1125(a), unfair competition under Cal. Bus. Prof. Code § 17200 et seq., interference with contractual relations, interference with prospective economic advantage, misrepresentation, breach of the covenant of good faith and fair dealing, specific performance, and rescission and reimbursement.

## PARTIES

1.     Plaintiff Giselle Turchet ("Turchet") is an individual who resides in San Mateo County, California.

2.     Plaintiff Turchet Transport, Inc., doing business as Mayfield Transport ("Mayfield Transport CA"), is a California corporation headquartered in San Mateo County, California.

3.     Defendant Rick Mayfield ("Mayfield") is an individual who resides in Jackson County, Oregon.

4.     Defendant Katie Mayfield is an individual who resides in Jackson County, Oregon.

5.     Defendant Mayfield Transport LLC ("Mayfield Transport Oregon") is an Oregon Corporation doing business in Oregon and California, including San Mateo County, California.

## JURISDICTION AND VENUE

6.     Turchet resides in San Mateo County, California and operates Mayfield Transport CA out of San Mateo County, California.  Mayfield Transport Oregon is a corporation duly formed under the laws of the State of Oregon, and the Mayfields are residents of Oregon.  The damage to Plaintiffs by reason of the wrongful acts and conduct of Defendants, as herein alleged, exceeds $75,000, inclusive of interest and costs.  Therefore, this Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. section 1332.

7.     Venue is proper in and the Defendants are subject to the personal jurisdiction of this court, because Defendants do business in this District and events giving rise to this action occurred in this District.  Venue is also proper because Plaintiffs' headquarters are located in this District.

**FACTS**

8.     Plaintiff Turchet is a horse-lover who has worked with and around horses for many years. As a longtime owner/operator of Page Mill Pastures with her ex-husband, Turchet also hauled horses as it related to her horse boarding business.[1]

9.     Turchet came to know Defendants, the Mayfield's, when Rick Mayfield ("Mayfield") began requesting that Turchet haul horses for him.  Mayfield is well-known in the business of horse-hauling.  The Mayfields' former company, Mayfield Transport LLC, a California limited liability company (and not the present Defendant) ("Mayfield Transport LLC"), was the business that the Mayfields owned and operated prior to selling the assets of that business to Turchet.

10.     In or around late 2016, Mayfield suggested that Turchet purchase the assets of Mayfield Transport LLC, because he said he wanted to get out of the horse hauling business.  Turchet believed that a business relationship with the Mayfields, and ultimately purchasing the business's assets from them, would be a promising venture for her.

**Representations by the Mayfields to Get Turchet to Buy Their Business Assets**

11.     In selling Turchet on the idea of purchasing the assets of Mayfield Transport LLC, Mayfield talked a big game and made Mayfield Transport LLC sound very lucrative in order to persuade Turchet into purchasing the assets of the company.

12.     As part of the sale negotiations, Mayfield told Turchet that he wanted to get out of the horse-hauling business to move up to Oregon and build horse trailers.

13.     Mayfield represented that the Mayfield Transport LLC financials that he provided to Turchet actually underreported income that he made through Mayfield Transport LLC.  Mayfield also represented that Turchet would be able to make a lot more money with the horse hauling business than what she saw in the Mayfield Transport LLC financials.

14.     At the time of sale, Mayfield showed Turchet a list of Mayfield Transport LLC's top clients from 2015 and 2016 to encourage her to purchase the business assets.  Mayfield, though,

---

[1] Turchet also has an impeccable safety record for the horses she has hauled, because Turchet takes pride in her work, knows horses very well, and takes care to ensure safe transport of any horses she has hauled.

COMPLAINT

withheld certain lucrative clients from the list of top clients that he showed Turchet, such as Pomponio Ranch (in California).  On information and belief, Mayfield surreptitiously withheld other clients from the customer list that he showed Turchet so he could continue to serve them after the sale of the business assets to Turchet was completed.

15.     At the time of sale, Mayfield also showed Turchet a list of the expenses for Mayfield Transport LLC.  Turchet believes, and on this basis alleges, that Mayfield's expenses and deferred maintenance needs were intentionally not disclosed because later, in the first year of operation of Mayfield Transport CA, Turchet discovered that there was a large amount of deferred maintenance and repairs that were needed on the equipment that Turchet received from Mayfield Transport LLC.[2]

16.     At the time of sale, Mayfield also represented, Turchet understood, and it was later included as a seller covenant in the agreement, that Mayfield would assist Turchet in transitioning the Mayfield Transport LLC business to her, including the Mayfields' handling of some of the day-to-day operations.

17.     At the time of sale, Mayfield assured Turchet, and confirmed in the written agreement, that he would sell her the assets of Mayfield Transport LLC, stop transporting horses in California and Oregon, help her get the business Mayfield Transport CA up and running, and support her throughout. However, what the Mayfields ultimately did was systematically steal the business back from Turchet after she paid $535,000 for the assets of Mayfield Transport LLC and spent more than $100,000 repairing the equipment.

**The Agreement to Purchase the Assets of Mayfield Transport LLC and the Addendum**

18.     On December 20, 2016, based on the representations and documents Mayfield provided Turchet, the Mayfields initially entered into an oral agreement with Turchet for the purchase and sale of the assets of Mayfield's horse transportation business, Mayfield Transport LLC.  The oral agreement was later formalized by the Asset Purchase and Sale Agreement ("Agreement") signed by the parties on January 30, 2017.  Ex. A (Agreement).

---

[2] Turchet was required to repair much of the equipment in that first year, which was done at a cost of over $122,000 to Turchet.

COMPLAINT

19.     Per the terms of the Agreement, Turchet was to pay the Mayfields $745,000 for the assets of Mayfield Transport LLC, broken down into the following amounts:  (i) Furniture, fixtures, and equipment - $420,000; (ii) Business Tradename and Goodwill - $315,000; (iii) Covenant Not to Compete - $10,000.

20.     As part of the written Agreement, the Mayfields also made several promises to Turchet that they ultimately breached.  Those promises include the "Noncompetition," "Use of Company Name," "Cooperation," and "Transition Assistance" clauses.

21.     Subsequent to the Agreement, around November 2018, the parties entered into a written addendum to the Agreement (the "Addendum"), whereby Turchet sold back some equipment to the Mayfields ("2014 Kenworth, 1985 Grand Prix & 2007 Phoenix for the purchase price of $210,000") for a reduction of the total purchase price of the original Agreement.  Accordingly, after the Addendum was executed in late 2018 and the equipment returned to the Mayfield's, Turchet had fully paid $535,000 for the assets of Mayfield Transport LLC under the Agreement. Ex. B (Addendum).  The Addendum specifically confirmed the "Noncompetition" clause, or "covenant not to compete," in the Agreement, which prohibited the Mayfields from hauling horses in California and Oregon through the end of 2021. *Id.*

### The Mayfields' Multiple Breaches of the Agreement

22.     Turchet has consistently complied with the Agreement.  Unfortunately, the Mayfields have not.  Indeed, the Mayfields have never abided by the Agreement from the moment that the parties entered the Agreement.  This has not only damaged Turchet's Mayfield Transport CA business severely, but it has been a source of great distress for her.  Defendants have surreptitiously stolen back the "business" that the Mayfields sold to Turchet by surreptitiously forming a corporation by the same name in Oregon, Defendant Mayfield Transport Oregon, never ceasing horse hauling in California and Oregon, and taking intentional actions to undermine Turchet and Mayfield Transport CA while hauling horses in direct contravention of the promises they made in the Agreement.  Since Defendant Mayfield Transport Oregon has been operating, Mayfield Transport CA has been severely disrupted.  Turchet has seen her Mayfield Transport CA business and prospects decline, and she has been forced to lay off some of her longest and most dedicated and reliable employees due to Mayfield Transport CA's financial

difficulties.  The Mayfields are in breach of the Agreement for violating at least the Noncompetition,

Use of Company Name, Cooperation, and Transition Assistance clauses.

**The Mayfields Breach the Noncompetition the Clause**

23.     In selling the assets of their Mayfield Transport LLC business to Turchet, the Mayfields

signed a noncompetition clause.  The "Noncompetition" clause of the Agreement states as follows:

> Seller will not, expressly or impliedly, for a period from the date of this Agreement to
> and including December 31, 2021, directly or indirectly, engage in or perform for, or
> permit its name to be used in connection with, or carry on, or own any part of, any
> business similar to the activities, operations, and business involving the assets sold under
> this Agreement, as conducted by Seller as of the date hereof, in California and Oregon.
> Seller represents that these States are those in which Seller is conducting its business
> involving its sold assets. If an action to enforce this covenant is initiate, damages will
> NOT be limited to the amount allocated in the purchase price. Damages will be all those
> provable, and allowed by law.

24.     In violation of the Agreement, Rick Mayfield never stopped hauling horses in California

and Oregon.  Mayfield instead continued hauling horses for customers that were on the customer list

provided to Turchet at the time of sale.  On information and belief, Mayfield continues hauling horses

for customers that were known to or on the list provided to Turchet, including Jet Pets, John French, and

Hilary Johnson (Rose Hill Stable).

25.     Mayfield continues hauling horses for Laura Gerst (Windy Hill), a customer on the

customer list provided to Turchet, a former customer of Mayfield Transport LLC, and a former customer

of Mayfield Transport CA.  On or around May 2019, Ms. Gerst of Windy Hill ceased using Turchet to

haul her horses, and presently Mayfield is hauling her horses.  Mayfield confirmed in August 2019 by

text message that Defendants were hauling horses for Laura Gerst. "WHY DO YOU ACT

SURPRISED?  YOU KNEW I WAS [HAULING FOR LAURA GERST] BECAUSE EVERYONE

ELSE WAS BUSY."  Defendants hauled horses for Laura Gerst of Windy Hills Equestrian in violation

of the Agreement.

26.     Pomponio Ranch is a former customer of Mayfield Transport LLC and a former customer

of Mayfield Transport CA as well.  Mayfield surreptitiously withheld Pomponio Ranch from the list of

top customers provided to Turchet at the time of sale.  Although Mayfield Transport CA hauled horses

for Pomponio Ranch from 2017 to May of 2019, these jobs were always booked through Mayfield.

Mayfield Transport CA no longer has Pomponio Ranch as a customer because Mayfield took Pomponio Ranch back as a customer in 2019.[3]  The Mayfields and Defendant Mayfield Transport Oregon presently continue to haul horses for Pomponio Ranch.  On information and belief, and in violation of the Agreement, Mayfield continues hauling horses in California and Oregon for other customers that were surreptitiously withheld from the customer list provided to Turchet at the time of sale.

27.    Mayfield and Mayfield Transport Oregon presently haul horses in California and Oregon for other customers as well, which is also in violation of the Agreement.  Turchet has seen Mayfield's trucks, including the 2014 Kenworth that Turchet sold back to Mayfield, at various airports and horse shows around California and Oregon within at least the past 6 months.  Turchet has seen Mayfield's Highway 5 in California, in Oregon, at Windy Hills in Los Altos Hills, at Jet Pets, and at the following horse parks, including Woodside, Paso Robles, Thermal, and Sonoma.[4]

28.    Defendants' employee has made numerous social media posts within the last six months showing Defendants trucks at various locations hauling horses.  Recently, Defendants' employee posted that he has logged 12,141 miles so far in 2020 hauling horses predominantly in California and in Oregon, but all around the United States.

29.    Mayfield hauled horses for a customer called Tex Sutton Equine Air Transportation ("Tex Sutton") in violation of the Agreement.  Mayfield Transport Oregon invoiced Tex Sutton for horse hauling that Defendants completed in or around late July or early August of 2019.  Defendants hauled horses for Tex Sutton in violation of the Agreement.

30.    Mayfield hauled horses for a customer called Barbara Phillips in violation of the Agreement.  In or around December 2019, Turchet received a text message from Barbara Phillips who had mistakenly sent Turchet a check $500 for a horse hauling job that was performed by Mayfield and Mayfield Transport Oregon in violation of the Agreement.  The text stated:  "THE CHECK WAS

---

[3] Turchet never had the contact information for the clients or trainers associated with Pomponio Ranch because Mayfield kept the contacts closely guarded and never permitted Turchet to have the information.  Mayfield's failure to fully transfer Pomponio Ranch to Turchet is a violation of the Agreement.

[4] Defendants' trucks have "Mayfield Transport" signage and are the same color, and the trailer the same make and model that Mayfield sold Turchet under the Agreement.

DELIVERED DEC. 5TH FOR $500.  RICK HAULED MY HORSE FROM ALAMO TO

WOODSIDE."  Defendants hauled horses for Barbara Phillips in violation of the Agreement.

### The Mayfields Continue Using the "Mayfield Transport" Tradename

31.     In selling the assets of the Mayfield Transport LLC business to Turchet, the Mayfields

signed a clause that permitted Turchet to use the "Mayfield Transport" name.  The "Use of Company

Name" clause in the Agreement states as follows:

> Seller agrees Purchaser is purchasing the right to use the name "Mayfield Transport"
> until at least December 31, 2021.  If after December 31, 2021, Seller wishes that
> Purchaser cease using that name, then Seller shall provide 60 days written notice to
> Purchaser to cease using the name.

32.     Following the Agreement, Turchet duly registered a fictitious business name in San

Mateo County, California for Mayfield Transport that is valid until March 10, 2022.

33.     In violation of the Agreement, in January 2019, Mayfield filed Articles of Organization

registering Mayfield Transport Oregon in Oregon.  The Mayfields have continued hauling horses under

the tradename "Mayfield Transport" through Mayfield Transport Oregon, which the Mayfields sold

Turchet the express and exclusive use of under the Agreement.  On or around August 4, 2019,

Defendant Mayfield Transport Oregon invoiced a customer, Tex Sutton, also known as H.E. Sutton

Forwarding Co., LLC, for horse hauling that Mayfield performed on July 29, 2019 and August 4, 2019.

At about the same time, Turchet also hauled horses for Tex Sutton and invoiced Tex Sutton accordingly

under Mayfield Transport CA.  On or around August 8, 2019, H.E. Sutton Forwarding Co., LLC

mistakenly paid the Defendants $1,550 for both the Mayfield Transport Oregon and the Mayfield

Transport CA invoices.

34.     The Mayfields' use of the Mayfield Transport tradename has caused customer confusion

and is a violation of the Agreement.

### The Mayfield's Guarded Former Mayfield Transport LLC Customers

35.     In selling the assets of their Mayfield Transport LLC business to Turchet, the Mayfields

signed a clause that obligated the Mayfields to help transition the ownership of clients/trainers,

organizing schedules and loads, and help to drive if needed.  The "Transition Assistance" clause in the

Agreement states as follows:

7

For the next 2.5 years Seller agrees to assist with transition of ownership. This includes transitioning clients/trainers to book jobs directly with Purchaser while assisting with the organization of schedules and loads. Seller will be paid on a time and expense paid basis should he need to help drive or an onsite basis along with travel expenses covered by the Purchaser.

36.     In violation of the Agreement, Mayfield did not assist with "transition of ownership" to Turchet from January 2017 to August 2019, including Mayfield did not "[transition] clients/trainers to book jobs directly with [Turchet] while assisting with the organization of schedules and loads." Mayfield kept his Mayfield Transport LLC customers closely guarded even after selling Turchet the assets of Mayfield Transport LLC. One such customer of Mayfield Transport LLC, Pomponio Ranch, never booked any jobs directly with Turchet, and Turchet never had the contact information for the clients or trainers associated with Pomponio Ranch because Mayfield did not allow it even though Turchet hauled horses for Pomponio Ranch from 2017 to May 2019. Turchet believes, and on this basis alleges, that Mayfield never transitioned all of the Mayfield Transport LLC customers to Turchet, did not encourage customers to book jobs directly with Turchet, and did not assist Turchet with the organization of schedules and loads, yet Mayfield and Mayfield Transport Oregon continue to haul horses for former Mayfield Transport LLC customers in violation of the Agreement.

37.     Per the "transition assistance" clause, the Mayfields would be paid on a "time and expense paid basis should [Mayfield] need to help drive." On multiple occasions, Mayfield Transport CA has requested Mayfield's services to help haul horses. In violation of the Agreement, the Mayfields refused to abide by the "transition assistance" clause of the Agreement and demanded excessive payments. In October 2018, Turchet deposited $16,925 into the Mayfields' account for hauling that Mayfield did in September 2018. Since January 2017, Turchet has paid the Mayfield's $35,000-40,000 for help in hauling horses, which was paid out to Mayfield at a higher rate than what was required by the Agreement, a "time and expense" paid basis.

### The Mayfields Have Completely Disrupted Turchet's Business

38.     In selling the assets of their Mayfield Transport LLC business to Turchet, the Mayfields signed a clause that obligated the Mayfields to cooperate with Turchet on the transfer of assets and not to disrupt Turchet's business. The "Cooperation" clause in the Agreement states as follows:

Seller agrees to cooperate with Purchaser, and on Purchaser's reasonable request, to execute all documents and take all actions as necessary to perfect and implement Purchaser's full ownership of the assets of Seller purchased under this Agreement, to protect the good will transferred, and to prevent any disruption of Purchaser's business relating to any of Seller's employees, suppliers, customers, or other business relationships.

39.     In violation of the Agreement, Defendants have taken direct actions to prevent Turchet's full ownership of the assets sold to Turchet under the Agreement.  Defendants have interfered with the alleged "good will" that was transferred to Turchet by the Agreement and have disrupted Turchet's Mayfield Transport CA business by inter alia withholding Mayfield Transport LLC customers from the customer list shown to Turchet at the time of sale and hauling horses for customers that were on the customer list that was sold to Turchet under the Agreement.  Defendants have operated in direct competition with Plaintiffs.  Turchet believes, and on this basis alleges, that Mayfield Transport CA no longer hauls horses for Jet Pets, John French, and Hilary Johnson (Rose Hill Stable), Laura Gerst (Windy Hill), and Pomponio Ranch, because Defendants interfered with these customers and continue to haul horses for these customers.

## FIRST CAUSE OF ACTION

### Breach of Contract

### (Against Rick and Katie Mayfield)

40.     The allegations of paragraphs 1-39 are incorporated as though fully set forth herein.

41.     Turchet and the Mayfields entered into a written Asset Purchase and Sale Agreement ("Agreement") signed by the parties on January 30, 2017.

42.     The Agreement is valid and enforceable, and supported by adequate, mutual consideration.

43.     Turchet has performed each and every one of her material obligations under the Agreement.

44.     The Mayfields have breached the Agreement by:  (i) engaging in horse transport services in California and Oregon; (ii) continuing to use and invoice customers under the tradename "Mayfield Transport"; (iii) surreptitiously withholding customers and customer contacts from Turchet; (iv)

9

1   preventing customers from booking directly with Turchet; and (v) overcharging Turchet for helping haul

2   horses.

3       45.    Plaintiffs have been damaged directly and consequentially by the Mayfields' breach of

4   the Agreement.  Plaintiffs' direct damages have been estimated to be no less than $225,000 in 2019

5   alone.  Plaintiffs' consequential damages have been no less than $428,000 for the diminution of the

6   value of the assets Turchet purchased under the Agreement.  But, the final amount of Plaintiffs' direct

7   and consequential damages is to be determined at trial.

8

9                                    **SECOND CAUSE OF ACTION**

10   **False Designation of Origin, False or Misleading Advertising, 15 U.S.C. § 1125(a)**

11                                    **(Against All Defendants)**

12      46.    The allegations of paragraphs 1-45 are incorporated as though fully set forth herein.

13      47.    Turchet is lawfully engaged in the business of transporting horses as "Mayfield

14   Transport" (Mayfield Transport CA) in and around California and Oregon.

15      48.    Defendants' conduct, including engaging in horse transport services in California and

16   Oregon while using the "Mayfield Transport" tradename in direct contravention of the Agreement, in

17   direct competition with Plaintiffs, and deceiving customers into using Defendants' services under the

18   "Mayfield Transport" tradename as if Defendants are Mayfield Transport CA, constitutes unfair

19   competition under 15 U.S.C. § 1125(a).  Mayfield's conduct of surreptitiously withholding customers

20   and customer contacts from Turchet when those customers were either known to Turchet or on the

21   customer list provided to Turchet at the time of sale and preventing customers from booking directly

22   with Turchet constitutes unfair competition under 15 U.S.C. § 1125(a), as it has deceived customers into

23   using Defendants' services under the "Mayfield Transport" tradename as if Defendants are Mayfield

24   Transport CA.

25      49.    Defendants knew or should have known that the acts described herein would be unfair,

26   misleading, and deceptive and have the potential to cause confusion in the marketplace.  Defendants'

27   acts described herein has caused confusion in the marketplace.  Barbara Phillips incorrectly sent a check

28

to Turchet for horse hauling services that had been provided by Defendants.  Tex Sutton incorrectly sent a check to Defendants for horse hauling services that had been provided by Mayfield Transport CA.

50.     As a direct and proximate result of Defendants' unfair conduct, Plaintiffs have and will continue to suffer damage and injury to their business, reputation, and goodwill, because of Defendants' conduct.

51.     Plaintiffs are entitled to preliminary and permanent injunctive relief to enjoin Mayfield and Mayfield Transport Oregon from unfair competition in California and Oregon.  Unless enjoined and restrained, Defendants' conduct will continue to cause irreparable injury to Plaintiffs' reputation and goodwill, for which Plaintiffs have no adequate remedy at law.

52.     Defendants' unfair conduct has been deliberate, willful, and in utter disregard of Plaintiffs' rights.  Defendants have realized unjust profits, gains, and advantages in an amount to be determined at trial as a proximate result of their unfair conduct, and will continue to do so until enjoined from engaging in horse transport services.  Plaintiffs are entitled to all direct and consequential damages caused by Defendants as well as statutory damages for the unfair conduct having been willful, including disgorgement of profits and reasonable attorneys' fees and expenses.

## THIRD CAUSE OF ACTION

### Unfair Competition, Cal. Bus. Prof. Code § 17200 et seq.

**(Against All Defendants)**

53.     The allegations of paragraphs 1-52 are incorporated as though fully set forth herein.

54.     California's Unfair Competition Law ("UCL") defines "unfair business competition" to include any "unlawful, unfair, or fraudulent" act or practice.  Cal. Bus. Prof. Code § 17200.

55.     Turchet is lawfully engaged in the business of transporting horses as "Mayfield Transport" (Mayfield Transport CA) in and around California and Oregon.

56.     Defendants' conduct, including engaging in horse transport services in California and Oregon while using the "Mayfield Transport" tradename in direct contravention of the Agreement, in direct competition with Plaintiffs, and deceiving customers into using Defendants' services under the "Mayfield Transport" tradename as if they are Mayfield Transport CA, constitutes unfair competition

11

under Cal. Bus. Prof. Code § 17200 et seq.  Mayfield's conduct of surreptitiously withholding customers and customer contacts from Plaintiffs when those customers were either known to Turchet or on the customer list provided to Turchet at the time of sale and preventing customers from booking directly with Plaintiffs constitutes unfair competition under Cal. Bus. Prof. Code § 17200 et seq.

57.   Defendants knew or should have known that the acts described herein would be unfair, misleading, and deceptive and have the potential to cause confusion in the marketplace.  Defendants' acts described herein have caused confusion in the marketplace.  Barbara Phillips incorrectly sent a check to Turchet for horse hauling services that had been provided by Defendants.  Tex Sutton incorrectly sent a check to Defendants for horse hauling services that had been provided by Mayfield Transport CA.

58.   As a direct and proximate result of Defendants' unfair conduct, Plaintiffs have and will continue to suffer damage and injury to their business, reputation, and goodwill, and suffer loss of profits that would have been made but for Defendants' conduct.

59.   Plaintiffs are entitled to preliminary and permanent injunctive relief under Cal. Bus. Prof. Code § 17203 to enjoin the Mayfield's and Mayfield Transport Oregon from unfair competition in California and Oregon, as well as disgorgement and restitution to Plaintiffs all revenue associated with their unfair competition, or such portion of those revenues as the Court may find equitable.  Unless enjoined and restrained, Defendants' conduct will continue to cause irreparable injury to Plaintiffs' reputation and goodwill, for which Plaintiffs have no adequate remedy at law.

## FOURTH CAUSE OF ACTION

### <u>Interference with Contractual Relations</u>

### (Against All Defendants)

60.   The allegations of paragraphs 1-59 are incorporated as though fully set forth herein.

61.   Turchet was in an economic relationship and Mayfield Transport CA contracted with the following people and/or companies, including Jet Pets, John French, Hilary Johnson (Rose Hill Stable), Laura Gerst (Windy Hill), and Pomponio Ranch, as these were customers on the list of customers that

COMPLAINT

Turchet purchased from the Mayfield's and Mayfield Transport LLC.  Mayfield Transport CA contracted with these people and/or companies to haul horses for them between 2017 and 2019.

62.     Defendants knew of these relationships because they were customers on the Mayfield Transport LLC customer list that Turchet purchased from the Mayfields under the Agreement, or that the Mayfields withheld from Turchet prior to and after entering the Agreement;

63.     Defendants have intentionally and/or negligently interfered and continued to interfere with Plaintiffs' contractual relationships with their customers.

64.     The Mayfields, through Defendant Mayfield Transport Oregon:  (i) engaged in horse transport services in California and Oregon; (ii) invoiced customers under the tradename "Mayfield Transport"; (iii) surreptitiously withheld customers and customer contacts from Turchet; (iv) prevented customers from booking directly with Turchet; and (v) overcharged Turchet for helping haul horses.

65.     Defendants have interfered and continue to interfere with Plaintiffs' contractual relationships with the Mayfield Transport CA customers to put Plaintiffs at a competitive disadvantage.

66.     Plaintiffs have been damaged directly and consequentially by Defendants' acts and conduct of interfering with Plaintiffs' contractual relationships in an amount to be determined at trial, but no less than the jurisdictional amount of this Court.

67.     Plaintiffs are informed and believe and on that basis allege that Defendants committed the aforementioned acts maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiffs, with malice, and in conscious disregard of Plaintiffs' rights such that Plaintiffs are entitled to punitive damages in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

### Interference with Prospective Economic Advantage

**(Against All Defendants)**

68.     The allegations of paragraphs 1-67 are incorporated as though fully set forth herein.

69.     Turchet paid a substantial amount of capital for the assets of Mayfield Transport LLC under the Agreement, which included the furniture, fixtures, equipment, tradename, goodwill, and for a covenant not to compete.  Turchet has invested substantial capital and resources in obtaining the

13

Mayfield Transport LLC customer list by purchasing this list under the Agreement and subsequently cultivating her relationships with her customers by safely hauling their horses.  In the first year of operation, Plaintiffs also invested a substantial amount of capital for equipment repairs and deferred maintenance on the equipment to ensure that she transported her customers' horses safely.

70.     These relationships represent the probability of future economic business on which Plaintiffs relied to meet their business goals to run a profitable business.

71.     Defendants were aware of these prospective relationships, as the Mayfields showed Turchet the list of Mayfield Transport LLC's customers at the time of sale and sold Turchet this list under the Agreement.  Defendants intentionally and/or negligently conspired to interfere with Plaintiffs' prospective economic advantage with their customers to put Plaintiffs at a competitive disadvantage to the Defendants.

72.     Defendants' wrongful conduct has damaged Plaintiffs' expected business, proximately resulting in substantial loss of revenues and other damage to Plaintiffs, in an amount to be determined at trial, but no less than the jurisdictional amount of this Court.

73.     Plaintiffs are informed and believe and on that basis allege that Defendants committed the aforementioned acts maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiffs, with malice, and in conscious disregard of Plaintiffs' rights such that Plaintiffs are entitled to punitive damages in an amount to be determined at trial.

**SIXTH CAUSE OF ACTION**

**Misrepresentation**

**(Against Rick and Katie Mayfield)**

74.     The allegations of paragraphs 1-73 are incorporated as though fully set forth herein.

75.     Prior to Turchet entering the Agreement to purchase the assets of Mayfield Transport LLC, Mayfield made certain misrepresentations to persuade Turchet to enter an agreement on which she relied.

76.     Turchet relied on Mayfield's representation that, in selling Turchet the assets of Mayfield Transport LLC, Mayfield was getting out of the horse-hauling business to move up to Oregon and build

14

horse trailers.  Turchet relied on Mayfield's representation that Mayfield Transport LLC's income was greater than reported on the Mayfield Transport LLC financials.  Turchet relied on Mayfield's representation that she was purchasing and would have access to each and every one of Mayfield Transport LLC's customers.  Turchet relied on Mayfield's representation of Mayfield Transport LLC's expenses as shown to her prior to the sale.  Turchet relied on Mayfield's other representations that Mayfield would assist Turchet in transitioning the Mayfield Transport LLC business to her, including the Mayfields' handling of some of the day-to-day operations.

77.     The false and misleading statements made by the Mayfields were material to Turchet's decision to purchase the assets of Mayfield Transport LLC from the Mayfields.

78.     At the time the Mayfields made each of the above promises, Plaintiffs believe, and on this basis allege, that the Mayfields had no intention to stop hauling horses in California and Oregon after Turchet purchased the assets of Mayfield Transport LLC.

79.     Mayfield knew his statements about Mayfield Transport LLC's finances, including its tax returns, customer list, and annual expenses were false and misleading when made and that Turchet would rely upon them to her detriment, and thereby intended to defraud Turchet.

80.     Plaintiffs did in fact reasonably and justifiably rely on these false and misleading statements.

81.     Plaintiffs were harmed by this reasonable reliance.

82.     The Mayfields' wrongful conduct was a direct and proximate cause and/or substantial factor in causing Plaintiffs' damages and harm, in an amount to be determined at trial, but no less than the jurisdictional amount of this Court.

**SEVENTH CAUSE OF ACTION**

**<u>Breach of the Covenant of Good Faith and Fair Dealing</u>**

**(Against Rick and Katie Mayfield)**

83.     The allegations of paragraphs 1-82 are incorporated as though fully set forth herein.

84.     The Agreement is a contract that is valid and enforceable as to the Mayfields.  Inherent in the Agreement is the obligation to abide by the duty of good faith and fair dealing in connection with the implementation of the Agreement, including the duty to refrain from any and all acts that are inimical to

15

the spirit of the Agreement and that would deprive Turchet of the benefit of the bargain owed to her thereunder.

85.     The Mayfields have breached the covenant of good faith and fair dealing of the Agreement by inter alia:  (i) engaging in horse transport services in California and Oregon; (ii) invoicing customers under the tradename "Mayfield Transport" through Mayfield Transport Oregon; (iii) surreptitiously withholding customers and customer contacts from Plaintiffs; (iv) preventing customers from booking directly with Plaintiffs; and (v) overcharging Plaintiffs for helping haul horses.

86.     As a result of the Mayfields' breach of the covenant of good faith and fair dealing for unfairly interfering with Plaintiffs' right to receive the benefits under the parties' Agreement, Plaintiffs have been harmed in an amount to be determined at trial.

### EIGHTH CAUSE OF ACTION

### Specific Performance

### (Against Rick and Katie Mayfield)

87.     The allegations of paragraphs 1-86 are incorporated as though fully set forth herein.

88.     Turchet and the Mayfields entered into a valid, written, and binding Asset Purchase and Sale Agreement ("Agreement") signed by the parties on January 30, 2017 for the sale of the assets of Mayfields' horse hauling business for the purchase price of $745,000.  At the time of the execution of the Agreement the purchase price was fair, just, and adequate.

89.     Turchet has performed each and every one of her material obligations under the Agreement.

90.     Contrary to their obligations under the Agreement, the Mayfields have breached the Agreement by:  (i) engaging in horse transport services in California and Oregon; (ii) continuing to use and invoice customers under the tradename "Mayfield Transport"; (iii) surreptitiously withholding customers and customer contacts from Turchet; (iv) preventing customers from booking directly with Turchet; and (v) overcharging Turchet for helping haul horses.  To protect and enforce Turchet's rights under the Agreement, Plaintiffs were required to file the present complaint.

16

COMPLAINT

91.     Plaintiffs have no adequate remedy at law except to enjoin the Mayfields from further violations of the Agreement.  Plaintiffs have taken substantial actions in reliance on the Mayfields' performance of the Agreement, which cannot be fully compensated by monetary damages.

92.     Accordingly, Turchet is entitled to specific performance of the Agreement, enjoining the Mayfields from hauling horses in and around California and Oregon and using the "Mayfield Transport" tradename until January 1, 2022 and assisting with the complete transfer of goodwill to Plaintiffs, and upon such other conditions as the Court deems equitable, including but not limited to the award of consequential and incidental damages.

## NINTH CAUSE OF ACTION

### Rescission and Reimbursement

### (Against Rick and Katie Mayfield)

93.     The allegations of paragraphs 1-92 are incorporated as though fully set forth herein.

94.     The Mayfields made representations and/or omissions of material fact concerning their company, Mayfield Transport, LLC, when discussing the sale of the business to Turchet.  The Mayfields misrepresented Mayfield Transport, LLC's financials, telling Turchet that she would be able to make a lot more money with the horse hauling business than what she saw in the Mayfield Transport, LLC financials.  The Mayfields misrepresented Mayfield Transport, LLC's expenses, as much of the equipment that Turchet purchased under the Agreement required maintenance and repairs that were intentionally not disclosed at the time of sale.

95.     The Mayfields misrepresented to Turchet that they were getting out of the horse-hauling business to move up to Oregon and build horse trailers.

96.     The Mayfields misrepresented and/or omitted Mayfield Transport LLC's goodwill, that is, the list of Mayfield Transport LLC's top clients from 2015 and 2016.

97.     The Mayfields misrepresented that they would assist Turchet with the transition of the Mayfield Transport, LLC business to her.

98.     The Mayfields made the foregoing misrepresentations and/or omissions of material fact with the full knowledge and expectation that Turchet would rely on said representation, which were a

COMPLAINT

material and critical part of Turchet's consideration when deciding to enter the Agreement with the Mayfields and purchase the assets of Mayfield Transport, LLC.

99.     Turchet justifiably relied on the Mayfields' representations in determining to purchase the assets of Mayfield Transport, LLC.

100.    If the true facts had been known, Turchet would not have entered into the Agreement with the Mayfields to purchase the assets of Mayfield Transport, LLC.

101.    Therefore, Turchet is entitled to rescission of the Agreement, including a declaration that the Agreement is rescinded and void *ab initio*.  Turchet is also entitled to an Order permitting her to return the assets purchased under the Agreement and complete reimbursement of her expenses associated with the Agreement, including but not limited to $535,000 for amounts paid under the Agreement and maintenance and repair expenses incurred in the first year of operation, including $122,000 for truck maintenance and repair.

.

## PRAYER

WHEREFORE, Plaintiffs pray that this Court:

1.     Enter judgment in Plaintiffs' favor against Defendants Rick Mayfield, Katie Mayfield, and Mayfield Transport Oregon on all counts of this Complaint;

2.     Enjoin Defendants Rick and Katie Mayfield from engaging in horse transport services in California and Oregon in for the duration of the parties' Agreement through December 31, 2021, and for an extension of 3 years for the Defendants' violations of the Agreement;

3.     Enjoin Defendant Mayfield Transport Oregon from engaging in horse transport services in California and Oregon until the expiration of Plaintiffs' injunction against the Mayfields;

4.     Enjoin the Mayfields' use of the Mayfield Transport tradename for the duration of the parties' Agreement through December 31, 2021, and for an extension of 3 years for the Mayfields' violations of the Agreement;

COMPLAINT

5.      Enjoin Defendant Mayfield Transport Oregon's use of the Mayfield Transport tradename until the expiration of Plaintiffs' injunction against the Mayfields;

6.      Award Plaintiffs specific performance of the noncompetition and use of company name clauses of the Agreement;

7.      Award Plaintiffs rescission of the Agreement and reimbursement of all expenses, including at least the $535,000 paid under the Agreement and $122,000 for equipment maintenance and repair fees;

8.      Award Plaintiffs all compensatory and consequential damages they sustained as a result of the Defendants' conduct in an amount to be determined at trial, including but not limited to $225,000 of lost revenue in 2019, $122,000 for maintenance and repair fees, and ongoing lost profits;

9.      Award Plaintiffs a disgorgement of Defendants' profits for Defendants' willful conduct in an amount to be determined at trial;

10.     Award Plaintiffs punitive damages she sustained as a result of the Defendants' malicious, fraudulent, and oppressive acts;

11.     Reimburse Plaintiffs' attorney's fees, costs, and expenses; and

12.     Award Plaintiffs such other and further relief, whether general or special, at law or in equity as the Court may deem appropriate, just and equitable.

## **DEMAND FOR JURY TRIAL**

Plaintiffs are entitled and hereby respectfully demand a trial by jury on all issues so triable.


Dated:  February 12, 2020                       Respectfully Submitted,
                                                MICLEAN GLEASON LLP


                                        By: ___/s/ *David J. Miclean*_____
                                                David J. Miclean
                                                Danielle M. Mihalkanin
                                                Attorneys for Giselle Turchet and
                                                Turchet Transport, Inc. d/b/a Mayfield Transport

COMPLAINT

1

2                                    **<u>VERIFICATION</u>**

3          I, Giselle Turchet, on my own behalf and on behalf of Turchet Transport, Inc., a California

4   corporation doing business as Mayfield Transport, verify under penalty of perjury that I have read the

5   above complaint and its contents.  I also verify that, to the best of my knowledge and recollection, the

6   matters stated in the complaint are true and correct.

7          Executed this 12th day of February, 2020.

8

9                                                            Giselle Turchet

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT