DAVID J. MICLEAN (SBN 115098)
dmiclean@micleangleason.com
DANIELLE M. MIHALKANIN (SBN 271442)
dmihalkanin@micleangleason.com
MICLEAN GLEASON LLP
411 Borel Avenue, Suite 310
San Mateo, CA  94402
Telephone: (650) 684-1181
Facsimile: (650) 684-1182

Attorneys for Plaintiff
Giselle Turchet and Turchet
Transport, Inc., dba Mayfield
Transport

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GISELLE TURCHET, an individual; and TURCHET TRANSPORT, INC., a California corporation doing business as MAYFIELD TRANSPORT;<br><br>    Plaintiffs,<br><br>v.<br><br>RICK MAYFIELD, an individual; KATIE MAYFIELD, an individual; and MAYFIELD TRANSPORT, LLC,<br><br>    Defendants. | Case No. 3:20-cv-01104-KAW<br><br>**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER, ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION, AND NO INJUNCTION BOND** |

*EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE AND NO INJUNCTION BOND:

Plaintiffs Giselle Turchet ("Turchet") and Turchet Transport, Inc., doing business as Mayfield Transport ("Mayfield Transport CA") (collectively, "Plaintiffs") will and do hereby request, pursuant to Fed. R. Civ. P. 65 and Civ. L.R.s 7-10 and 65-1, that this Court issue a temporary restraining order ("TRO"), an order to show cause why a preliminary injunction should not issue against Defendants Rick Mayfield ("Mayfield"), Katie Mayfield, and Mayfield Transport, LLC, an Oregon limited liability company ("Mayfield Transport Oregon") (collectively, "Defendants"), and not to issue an injunction bond against Plaintiffs.

Plaintiffs will and hereby do seek an Order from the Court, pursuant to Fed. R. Civ. P. 65 and Civ. L.R.s 7-10 and 65-1, on the grounds that Plaintiffs have demonstrated that they meet the requirements for a TRO, including likelihood of success on the merits, likelihood of irreparable harm in the absence of preliminary relief, the balance of equities, and the preliminary injunction is in the public interest.

This motion is brought on the grounds that Defendants, who sold a horse hauling business to Plaintiff Turchet representing to her that they were getting out of the horse hauling business and agreeing to an enforceable non-compete and other provisions, are actively breaching the covenant not to compete and are presently diverting customers to themselves while hauling horses under the Mayfield Transport Oregon business in violation of numerous provisions of the January 30, 2017 Asset Purchase and Sale Agreement with Turchet. The Asset Purchase and Sale Agreement granted Turchet exclusive use of the "Mayfield Transport" tradename through the end of 2021 and contained an enforceable noncompetition clause against Defendants for California and Oregon through the end of 2021.[1] Defendants' willful and malicious conduct has caused Plaintiffs severe harm, which will continue to be irreparable absent relief from this Court – as Defendants continue willfully and maliciously hauling

---

[1] Plaintiffs will also prevail on the Lanham Act claim for violation of 15 U.S.C. 1125(a) and the state law unfair competition claim under Cal. Bus. Prof. Code 17200, et seq., because there is actual customer confusion in the market as Defendants are operating their competing business using the same name "Mayfield Transport" that they transferred to Turchet under the Asset Purchase and Sale Agreement.

horses in and around California and Oregon using the Mayfield Transport tradename to Plaintiffs' detriment. Plaintiffs have suffered immense financial hardship, including lost goodwill, lost revenue, and lost employees as a result of Defendants' conduct, and a temporary restraining order is necessary to ensure that the Defendants do not continue to violate the Agreement to the detriment of Plaintiffs. Defendants have recently hauled horses to the Desert International Horse Park in Thermal, California for the Desert Circuit Equestrian Events that occur from mid-January to mid-March 2020, and Defendants' employee driver has logged more than 12,000 miles hauling horses since the beginning of the year. If Defendants are not immediately enjoined, Plaintiffs will lose out on even more prospective business of hauling horses throughout California and Oregon to the remaining horse shows in 2020, including at least the Northern Winter Classic in February and March, the Blenheim Spring Classic in March, and the Paso Park Spring Classic in April, among other shows and hauling opportunities throughout 2020. The balance of equities is in Plaintiffs' favor and the public interest is served by granting a temporary restraining order, because such an order will only require Defendants to abide by the existing contract between Turchet and Mayfield.

Plaintiffs respectfully request that the Court issue an immediate Temporary Restraining Order, ordering Defendants and their officers, agents, servants, employees, and all those in active concert or participation with them, to stop hauling horses in California and Oregon and stop using the "Mayfield Transport" tradename. Plaintiffs also respectfully request that the Court issue an Order to Show Cause setting a schedule for briefing and a hearing on a preliminary injunction and not require Plaintiffs to post an injunction bond because there is no realistic likelihood of harm to Defendants.

///
///
///
///
///
///
///
///

*EX PARTE* APPLICATION FOR TRO AND OSC

This motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the concurrently filed Declarations of Danielle M. Mihalkanin and Giselle M. Turchet, all pleadings and papers on file in this action, and upon such other matters as may be presented to the Court at or before any hearing on the Motion.

Dated:  February 12, 2020

Respectfully Submitted,
MICLEAN GLEASON LLP

By: ___/s/ *David J. Miclean*_____
    David J. Miclean
    Danielle M. Mihalkanin
    Attorneys for Giselle Turchet and Turchet
    Transport, Inc., dba Mayfield Transport

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs Giselle Turchet ("Turchet") and Turchet Transport, Inc., doing business as Mayfield Transport ("Mayfield Transport CA") (collectively, "Plaintiffs"), seek a temporary restraining order and preliminary injunction to enjoin Defendants Rick Mayfield ("Mayfield"), Katie Mayfield, and Mayfield Transport, LLC, an Oregon limited liability company ("Mayfield Transport Oregon") (collectively "Defendants"), from hauling horses in California and Oregon and from hauling horses under the "Mayfield Transport" tradename, pursuant to the Asset Purchase and Sale Agreement (the "Agreement") they signed. Despite the Mayfields' sale of their former Mayfield Transport horse hauling company to Turchet, including use of the tradename "Mayfield Transport" and an enforceable noncompete provision precluding Defendants from horse hauling in California and Oregon for four (4) years, the Mayfields have never stopped hauling horses in California and Oregon in compliance with the Agreement. Early on after the parties entered the Agreement, the Mayfields simply did not transition the business's assets to Turchet as required under the agreement, and kept secret customers and customer contact information that was supposed to be provided to Turchet, thereby preventing Turchet from operating Mayfield Transport CA effectively and independently. Further, after being paid in full for the purchase of the Mayfield Transport CA business, Defendants are in direct breach of the Agreement, openly operating the competing Mayfield Transport Oregon business, hauling horses in California and Oregon, and actively stealing back the customers that were provided to Turchet as an asset of the Mayfield Transport CA business under the Agreement. Defendants' conduct is in violation of numerous provisions of the January 30, 2017 Asset Purchase and Sale Agreement. And Plaintiffs will suffer irreparable harm absent relief from this court – as Defendants continue willfully and maliciously hauling horses in and around California and Oregon to Plaintiffs' detriment. Defendants have recently hauled horses to the Desert International Horse Park in Thermal, California for the Desert Circuit Equestrian Events that occur from mid-January to mid-March 2020, and Defendants' employee driver has logged more than 12,000 miles hauling horses since the beginning of the year. If Defendants are not immediately enjoined, Plaintiffs will lose out on even more prospective business of hauling horses throughout California and Oregon to the remaining horse shows in 2020, including at least the Northern Winter

Classic in February and March, the Blenheim Spring Classic in March, and the Paso Park Spring Classic in April, among other shows and other opportunities throughout 2020. Plaintiffs have suffered immense financial hardship as a result of Defendants' conduct, and a temporary restraining order is necessary to ensure that Plaintiffs do not suffer additional harm due to Defendants' wrongful conduct.

Plaintiffs respectfully request that the Court issue an immediate Temporary Restraining Order, ordering Defendants and their officers, agents, servants, employees, and all those in active concert or participation with them, to stop hauling horses in California and Oregon, and to stop hauling horses under the name "Mayfield Transport." Plaintiffs also respectfully request that the Court issue an Order to Show Cause setting a schedule for briefing and a hearing on a preliminary injunction and not require Plaintiffs to post an injunction bond.

## II.     FACTUAL BACKGROUND

### A.     The Asset Purchase Agreement and Addendum

Turchet is a horse lover and has been around horses for many years. Declaration of Giselle Turchet in Support of Plaintiffs' *Ex Parte* Application for a Temporary Restraining Order ("Turchet Decl."), ¶ 3. Before purchasing Mayfield Transport from Defendants, Turchet was a longtime and successful owner/operator of Page Mill Pastures with her ex-husband and hauled horses as it related to her horse boarding business. *Id*. Turchet and Mayfield began working together in 2016, when Mayfield requested that Turchet haul horses for him because Mayfield knew of Turchet's high standard of care for the horses she transports and of her impeccable safety record that went along with that care. *Id*. at ¶ X.

In the last part of 2016, the Mayfields began discussing with Turchet the possibility of her purchasing the assets of the Mayfields' then-company, Mayfield Transport, LLC, a California limited liability corporation (and not the current Defendant). *Id*. at ¶¶ 4-5. Turchet was intrigued because Mayfield was well known in the horse hauling industry, having taken over his father's horse hauling business many years ago, and because there are only a few horse haulers in California and Oregon that operate semi-trucks and can haul large quantities of horses to and from horse shows in and around California and Oregon. *Id*. at ¶¶ 4, 14. Mayfield assured Turchet that he was getting out of the horse hauling business, retiring, and moving up to Oregon where he was going to focus on building horse trailers. *Id*. at ¶ 5. The Mayfields ultimately persuaded Turchet to purchase the assets of the former

5

Mayfield Transport, LLC based on what turned out to be misstated financials[2], understated expenses[3], and an inaccurate customer list in which some of the larger (and potentially more lucrative customers) were intentionally withheld by Mayfield.

Relying on Mayfield's representations and believing at the time that purchasing the assets of the Mayfields' business and operating Mayfield Transport CA was a good business move for her, Turchet entered into an oral agreement with the Mayfields to buy their horse hauling business, which was later formalized by the Asset Purchase and Sale Agreement ("Agreement") signed by the parties on January 30, 2017.  Turchet Decl., Ex. A.  The Agreement was later modified by an Addendum in writing, whereby Turchet sold back some equipment to the Mayfields for a reduction of the total purchase price of the original Agreement.  Turchet Decl., Ex. B.  It was reiterated in the Addendum that the noncompetition clause of the Agreement remained in full force and effect.  *Id.*  And upon execution of the transfer back of some of the vehicle assets pursuant to the Addendum, Turchet had fully paid for the business assets of the former Mayfield's horse transport business under the Agreement.  Turchet Decl., ¶ 10.

### B. The Mayfields' Breaches of the Agreement

Turchet paid a significant sum of money, about $535,000 total under the Agreement, for the assets of Mayfield's former company, including the noncompetition provisions, the goodwill, and tradename.  *See* Turchet Decl., Exs. A-B (Agreement and Addendum).  And after selling the company to Plaintiffs, Defendants are actively trying to take it back.

The Agreement had certain provisions that were extremely important to Turchet and her ability to successfully operate Mayfield Transport CA.  Such important clauses included, among others, a noncompetition clause that restricted the Mayfields from engaging "expressly or impliedly" in the hauling of horses in California and Oregon until December 31, 2021.  Turchet Decl., Ex. A at 5.  The

---

[2] Plaintiffs were able to break even in 2017 and make a small amount of money in 2018 and the first half of 2019.  Turchet Decl., ¶ 12.

[3] In the first year of operation of her newly purchased business, Turchet had to spend more than $100,000 on equipment repair and maintenance that had been deferred prior to the sale and not disclosed to Turchet.  Turchet Decl., ¶ 11.

Agreement also included a use of company name clause that permitted Turchet to exclusively use the "Mayfield Transport" tradename through the end of 2021.[4]  *Id*. at 4-5.

### 1. Noncompetition Clause

The "noncompetition clause" restricted Defendants from hauling horses in California and Oregon until December 31, 2021.  The noncompetition clause states as follows:

> Seller [Rick and Katie Mayfield] will not, expressly or impliedly, for a period from the date of this Agreement to and including December 31, 2021, directly or indirectly, engage in or perform for, or permit its name to be used in connection with, or carry on, or own any part of, any business similar to the activities, operations, and business involving the assets sold under this Agreement, as conducted by Seller as of the date hereof, in California and Oregon.  Seller represents that these States are those in which Seller is conducting its business involving its sold assets.

Turchet Decl., Ex. A, at 5.  Under the noncompetition clause, Plaintiffs have an exclusive right to operate in California and Oregon to the exclusion of Defendants and Defendants are also enjoined from using their name, the "Mayfield Transport" tradename.

### 2. Use of Company Name Clause

The use of company name clause permitted Plaintiffs' exclusive use of the "Mayfield Transport" tradename through December 31, 2021.  The noncompetition clause prohibits Defendants from using the name in any business related to horse hauling.  The noncompetition clause states as follows:

> Seller will not…permit **its name to be used in connection with**, or carry on, or own any part of, any business similar to the activities, operations, and business involving the assets sold under this Agreement…

Truchet Decl., Ex. A, at 5.  The use of company name clause states as follows:

> Seller agrees Purchaser is purchasing the right to use the name **"Mayfield Transport"** until at least December 31, 2021.  If after December 31, 2021, Seller wishes that Purchaser cease using that name, then Seller shall provide 60 days written notice to Purchaser to cease using the name.

---

[4] Other important clauses included a "transition assistance" clause whereby the Mayfields were obligated to help transition the ownership of clients/trainers, and a "cooperation" clause whereby the Mayfields were to cooperate with Turchet on the transfer of assets and not to disrupt Turchet's business. These clauses were also breached by Defendants but will not be discussed at length.

Turchet Decl., Ex. A at 4-5.  Under the noncompetition clause and the use of company name clause, Plaintiffs are entitled to exclusive use of the Mayfield Transport tradename.

### 3. Defendants' Numerous Violations of the Noncompetition and Use of Company Name Clauses

Despite Mayfield's representations that he was selling Turchet the horse hauling business and retiring up to Oregon, in violation of the Agreement, Defendants never ceased hauling horses in Oregon and California from when the Agreement was signed.  Then, in early 2019, Defendants surreptitiously formed Mayfield Transport Oregon (an Oregon limited liability company) that has the same "Mayfield Transport" name that Defendants were prohibited from using under the noncompetition clause and the use of company name clause. *See* Declaration of Danielle M. Mihalkanin in Support of Plaintiffs' *Ex Parte* Application for a Temporary Restraining Order ("Mihalkanin Decl."), Ex. D (Articles of Organization for Mayfield Transport Oregon).

Around August 2019, Plaintiffs hauled horses for customer Tex Sutton Equine Air Transport ("Tex Sutton") from Ontario Airport (in Ontario, California) to Farmington, California.  Turchet Decl., Ex. E at 4 (Mayfield Transport CA Invoice); ¶ 15.  Around the same time, Defendants also hauled horses for Tex Sutton to Castro Valley, California and a layover in Los Altos, California.  *Id*. at 2 (Mayfield Transport Oregon invoice); ¶ 15.  Tex Sutton, having assumed that Mayfield Transport CA and Mayfield Transport Oregon were one in the same, paid both Mayfield Transport CA's invoice and Mayfield Transport Oregon's invoice to Defendants.  *Id*. at 3 (check made out to Mayfield Transport LLC for both Mayfield Transport CA and Mayfield Transport Oregon's invoices); ¶ 15.[5]

Also around August 2019, Turchet saw Defendants' trucks in California, and Mayfield admitted to Turchet in text messages that he was hauling horses in California and Oregon in violation of the Agreement for customers that he should have been sending to Plaintiffs under the Agreement.[6]  Turchet

---

[5] In addition to being direct evidence of Defendants' breach of the noncompetition and use of name clauses, this is also direct evidence of customer confusion under 15 U.S.C. 1125(a) and state law unfair competition under Cal. Bus. Prof. Code 17200, et seq.

[6] The "Transition Assistance" clause obligated Defendants for 2.5 years to assist with the transition of ownership to Plaintiffs.  "This includes transitioning clients/trainers to book jobs directly with Purchaser while assisting with the organization of schedules and loads."  Turchet Decl., Ex. A at 5.  Defendants' failure to transition customers to Plaintiffs is another direct breach of the Agreement.

Decl., Ex. F (TURCHET: "*NICE TO SEE* YOUR TRAILER AT [JET PETS]… THEN TO SEE YOU NOW ON 280 …"[7] MAYFIELD: "WHY DO YOU ACT SURPRISED?  YOU KNEW I WAS [HAULING FOR LAURA GERST] BECAUSE EVERYONE ELSE WAS BUSY."); Turchet Decl., ¶¶ 16-17.  In 2019 alone, Turchet personally saw Defendants' trucks on Highway 280 in San Mateo County, Highway 5 in Oregon, at Windy Hills in Los Altos Hills, at Jet Pets, and at the following horse parks, including Woodside, Paso Robles, Thermal, and Sonoma.  *Id*. at ¶ 16-18.

Then, around December 2019, Turchet received text messages from client Barbara Phillips informing Turchet that Phillips had inadvertently sent Turchet a check for horse hauling that was done by Defendants.  Turchet Decl., Ex. G ("THE CHECK WAS DELIVERED DEC. 5TH FOR $500.  RICK HAULED MY HORSE FROM ALAMO TO WOODSIDE.").[8]  Defendants had hauled Ms. Phillips' horse in California in violation of the Agreement.

Recently, Defendants' employee Scott Baird has made numerous social media posts showing Defendants' Mayfield Transport Oregon trucks in various locations in California where he was hauling horses in California and Oregon with Defendants' trucks.  Turchet Decl., Ex. H. (Scott Baird's FB posts); Turchet Decl., ¶ 20-21.  Based on Mr. Baird's posts, it is apparent that Defendants have recently hauled numerous horses to the Desert International Horse Park in Thermal, California for the Desert Circuit Equestrian Events that occur from mid-January to mid-March 2020.  Turchet Decl., ¶ 21.  Based on Mr. Baird's most recent post last week, it is apparent that Defendants have been hauling horses all up and down California and Oregon within the past month, as the map showing United States destinations visited by Mr. Baird in the last month have numerous California and Oregon locations identified and show that Mr. Baird has logged over 12,000 miles (many of such miles in California and Oregon) since the beginning of 2020 alone.  Turchet Decl., Ex. I.  Once the "Desert Circuit" horse show is completed, Defendants will haul these and other horses out of the horse park in Thermal, California, when the

---

[7] Turchet's facetious text was intended to confront Mayfield on the egregious violations of the Agreement.  Turchet Decl., ¶ 17.

[8] This is also direct evidence of customer confusion under 15 U.S.C. 1125(a) and state law unfair competition under Cal. Bus. Prof. Code 17200, et seq., in addition to being evidence of Defendants' breach of the non-competition clause.

events conclude in early March and will likely haul numerous horses throughout the circuit of horse shows throughout California in 2020.  Turchet Decl. at ¶ 18.

### C. Irreparable Harm to Plaintiffs

As Defendants have proceeded to surreptitiously steal back the "business" that the Mayfields sold to Turchet, the damage to Plaintiffs has been severe, ongoing, and irreparable. Customers are repeatedly confused by Defendants' operations and Turchet has to explain the situation to almost all of her present customers.  Turchet Decl., Exs. E, G; ¶¶ 15, 23.  As Defendants have diverted valuable customers away from Plaintiffs, Plaintiffs will imminently lose numerous business opportunities and customers by way of not being able to haul horses for former or prospective customers through the circuit of horse shows in California and Oregon for 2020, including at least the Northern Winter Classic in February and March, the Blenheim Spring Classic in March, and the Paso Park Spring Classic in April, among other shows throughout 2020.  *See* Turchet Decl., ¶ 18.  Horse hauling, especially large-scale horse hauling with tractor trucks and multiple horses, is a unique business in California and Oregon, and Defendants are breaching the Agreement with impunity to threaten Plaintiffs' business operations.[9]  Plaintiffs have suffered and will continue to suffer loss of goodwill to Defendants, loss of revenue, and loss of employees until Defendants are enjoined from hauling horses in California and Oregon and enjoined from using the Mayfield Transport tradename.

## III. STATEMENT OF LAW

"The analysis for granting a temporary restraining order is 'substantially identical' to that for granting a preliminary injunction." *McCarthy v. Servis One, Inc.*, Case No. 17-cv-00900-WHO, 2017 U.S. Dist. LEXIS 32622, at *9–10 (N.D. Cal. Mar. 7, 2017).  Such an order may be issued "where the moving party has established:  (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to plaintiff in the absence of preliminary relief; (3) the balance of equities tips in plaintiff's favor; and (4) that an injunction is in the public interest." *Cleanfish, LLC v. Sims*, No. 19-cv-03663-HSG,

---

[9] The "noncompetition" clause states as follows: "If an action to enforce this covenant is initiate [*sic*], damages will NOT be limited to the amount allocated in the purchase price.  Damages will be all those provable, and allowed by law."  Plaintiffs have also brought a claim for specific performance, which is a proper remedy here and also supports the temporary restraining order and injunction.

10

2019 U.S. Dist. LEXIS 108946, at *6 (N.D. Cal. June 28, 2019) (citing *Winter v. NRDC, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008)).

Federal Rule of Civil Procedure 65(b)(1) states that the court may issue a temporary restraining order without notice only if: "(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Also related to notice, the Court's Local Rule 65-1(b) states that, unless relieved by the Court for good cause shown, "on or before the day of an *ex parte* motion for a temporary restraining order, counsel applying for the temporary restraining order must deliver notice of such motion to opposing counsel or party."

## IV.   ARGUMENT

Plaintiffs are entitled to a temporary restraining order and preliminary injunction because Plaintiffs are likely to succeed on the merits of the claims against Defendants for breach of the Agreement's non-competition clause and "Mayfield Transport" tradename use provision, whereas here the Defendants have continued to haul horses in California and Oregon (notwithstanding the contractual obligation not to) and have improperly continued to use the Mayfield Transport name in their competing horse hauling business. Actual customer confusion has already occurred, and Plaintiffs have suffered reputational damage, and have lost goodwill, substantial revenue, clients, and employees due to Defendants' egregious breaches of the Agreement. The TRO and injunction should also issue because Plaintiffs will continue to suffer irreparable harm absent court intervention, the balance of equities is in Plaintiffs' favor, and an injunction against Defendants is in the public's interest.

### A.   Plaintiffs Are Likely to Succeed on the Merits of the Claims Against Defendants

In order to succeed on its request for a preliminary injunction, movant must make a clear showing that it is likely to succeed on the merits. *Nanoexa Corp. v. Univ. of Chi.*, 2010 U.S. Dist. LEXIS 95688, at *8 (N.D. Cal. Aug. 27, 2010). At an irreducible minimum, the moving party must demonstrate a fair chance of success on the merits or questions serious enough to require litigation. *Guzman v. Shewry*, 552 F.3d 941, 948 (9th Cir. 2009).

11

*EX PARTE* APPLICATION FOR TRO AND OSC

### 1. Mayfield Is Hauling Horses and Using the Mayfield Transport Tradename in Violation of the Agreement

Turchet will succeed on the breach of contract claim because the Mayfields have openly and willfully breached the Agreement by hauling horses in California and Oregon and using the "Mayfield Transport" name to do so. Although Cal. Bus. Prof. Code §§ 16000 *et seq.* generally bars agreements that restrain competition, they are appropriate and enforceable in the context of the sale of a business where such a covenant restricts competition temporally and by geographic area. *See* Cal. Bus. Prof. Code § 16601 (sale of shares in business exception). The exception provides that "any person selling the goodwill of a business, or any owner of a business selling all of his or her ownership interest in a business, or substantially all of its operating assets together with the business's goodwill, may agree with the buyer to refrain from carrying on a similar business within a specified geographic area in which the business so sold." *NewLife Scis., LLC v. Weinstock*, 197 Cal. App. 4th 676, 688, 128 Cal. Rptr. 3d 538, 548 (2011). "Where a covenant not to compete is executed as an adjunct of a sale of a business there is an inference that the business had a 'goodwill' and that it was transferred." *Id*. "The reason for this exception to the general rule against noncompetition covenants is to prevent the seller from depriving the buyer of the full value of its acquisition, including the sold company's goodwill." *Alliant Ins. Servs., Inc. v. Gaddy*, 159 Cal. App. 4th 1292, 1301, 72 Cal. Rptr. 3d 259, 267 (2008) (cited by *Roadrunner Intermodal Servs., Ltd. Liab. Co. v. T.G.S. Transp., Inc.*, Case No. 1:17-cv-01207-DAD-BAM, 2019 U.S. Dist. LEXIS 53278, at *25 (E.D. Cal. Mar. 28, 2019)).

The noncompetition clause of the Agreement is valid because it is compliant with Cal. Bus. Prof. Code § 16601 and does not contravene California law. The noncompetition clause of the Agreement states unequivocally that:

> Seller [Rick and Katie Mayfield] will not, **expressly or impliedly**, for a period from the date of this Agreement **to and including December 31, 2021**, **directly or indirectly**, engage in or perform for, **or permit its name to be used in connection with**, or carry on, or own any part of, any business similar to the activities, operations, and business involving the assets sold under this Agreement, as conducted by Seller as of the date hereof, in **California and Oregon**. Seller represents that these States are those in which Seller is conducting its business involving its sold assets.

[Emphases added.] Turchet Decl., Ex. A at 5. The Addendum to the Agreement reaffirmed the noncompetition clause. *Id*., Ex. B. The Agreement also included the sale of the goodwill in Defendants'

company. *Id.*, Ex. A at 2 (The tradename and goodwill comprised $315,000 of the original purchase price of the company.). The noncompetition clause is valid because it is both limited in time and geographic area, as required by statute. Therefore, any horse hauling in California and Oregon performed by Defendants prior to January 1, 2022 as well as Defendants' use of the Mayfield name for such horse hauling is in violation of this noncompete clause.

The evidence that Defendants are hauling horses in violation of the noncompetition clause in California and Oregon in violation of the Agreement is overwhelming, and Defendants must be immediately enjoined from further violation of the Agreement. In January 2019, Mayfield surreptitiously registered "Mayfield Transport, LLC" in Oregon and began operating under Mayfield Transport Oregon. Mihalkanin Decl., Ex. D. Defendants have been operating Mayfield Transport Oregon and invoicing customers directly since then as was exemplified by Defendants' invoice to customer Tex Sutton in August 2019. *See* Turchet Decl., Ex. E (Tex Sutton invoice).[10] In August 2019, Mayfield admitted to Turchet in text messages that he was hauling horses in California and Oregon in violation of the Agreement. Turchet Decl., Ex. F ("WHY DO YOU ACT SURPRISED? YOU KNEW I WAS [HAULING FOR LAURA GERST] BECAUSE EVERYONE ELSE WAS BUSY."). In December, Turchet was contacted by a customer who mistakenly sent a payment to Mayfield Transport CA when Defendants had hauled the customer's horse. *See* Turchet Decl., Ex. G ("THE CHECK WAS DELIVERED DEC. 5TH FOR $500. RICK HAULED MY HORSE FROM ALAMO TO WOODSIDE.") And recently, Defendants' employee, Scott Baird, has made numerous social media posts showing Defendants' Mayfield Transport Oregon trucks in various California locations in which he is hauling horses in California with Defendants' trucks, specifically to the Desert International Horse Park in Thermal, California. *See* Turchet Decl., Ex. H. (Scott Baird's Facebook posts); Turchet Decl., ¶ 16, 21. Turchet herself personally saw Defendants' Mayfield Transport Oregon trucks on Highway 280 in San Mateo County, Highway 5, in Oregon, at Windy Hills in Los Altos hills, at Jet Pets, and at the

---

[10] Plaintiffs will also prevail on the Lanham Act and state law unfair competition claims because this is direct evidence of customer confusion. "[T]he touchstone of a Section 1125(a) unfair competition claim is whether the defendant's actions are likely to cause confusion." *Matrix Essentials, Inc. v. Rmporium Drug Mart, Inc.*, 988 F.2d 587, 592 (5th Cir. 1993).

following horse parks, including Woodside, Paso Robles, Thermal, and Sonoma. *Id*. at ¶ 16-18.; *and see Id*. at Ex. C ("NICE TO SEE YOUR TRAILER AT [JET PETS]… THEN TO SEE YOU NOW ON 280…..") And Mr. Baird's most recent post last week shows that Defendants have been hauling horses all up and down California and Oregon within the past month, as the map showing United States destinations visited by Mr. Baird in the last month has numerous California and Oregon locations identified and shows that Mr. Baird has logged over 12,000 miles (many of which are in Oregon and California) since the beginning of 2020 alone. *Id*. at Ex. I.

Based on the evidence of Defendants' open and willful misconduct in violation of the Agreement, Turchet is likely to prevail on the breach of contract claim for violation of the non-compete and, as such, a temporary restraining order should immediately be granted.

### B.   Plaintiffs Have and Will Continue to Suffer Irreparable Harm if Defendants Are Not Enjoined

Plaintiffs have suffered irreparable harm, including loss of goodwill, revenue, and employees and will continue to suffer such harm as a result of Defendants' egregious misconduct. "Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm." *Henry Schein Inc. v. Cook*, 191 F. Supp. 3d 1072, 1077 (N.D. Cal. 2016) (quoting *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001)). To support injunctive relief, harm must not only be irreparable, it must be imminent; establishing a threat of irreparable harm in the indefinite future is not enough. Rather, a plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief. *Amylin Pharm., Inc. v. Eli Lilly & Co.*, 456 F. App'x 676, 679 (9th Cir. 2011).

Defendants unequivocally agreed to abstain from competing with Plaintiffs in Oregon and California for a time under the noncompetition clause and to abstain from using the Mayfield Transport tradename in both the noncompetition clause and use of company name clause. Yet, Defendants have both continued to haul horses in violation of the noncompetition clause and done so using the same tradename that they sold to Plaintiffs to use exclusively. Defendants' breaches were at first surreptitious, but now Defendants are openly and willfully violating the Agreement to Plaintiffs' detriment. Defendants' misconduct has caused Plaintiffs to lose goodwill, revenue, and employees,

which will continue until Defendants are enjoined from breaching the Agreement. Turchet Decl., ¶ 23. Specifically, and imminently, Plaintiffs will lose numerous prospective business opportunities by way of not being able to haul horses through the circuit of horse shows discussed above in California and Oregon for 2020. *See id.*, ¶ 18. Transporting horses to and from these types of horse shows requires large and professional operations like only Plaintiffs can provide. *Id.* at ¶ 14. Defendants have hauled numerous horses down to Thermal, California for the Desert Circuit Equestrian events taking place right now. *Id.* at 18. Once that show concludes, Defendants will haul the horses out of that horse park to other destinations in California, including at least the Northern Winter Classic in February and March, the Blenheim Spring Classic in March, and the Paso Park Spring Classic in April, among other shows throughout 2020 to the detriment of Plaintiffs, unless enjoined from doing so. *Id.* Plaintiffs have lost valuable employees and risk losing additional employees if Defendants are not enjoined from violating the Agreement. *Id.* at 23.

    **C.**    **The Balance of Equities Is in Plaintiffs' Favor**

The balance of equities weighs in favor of Plaintiffs. In assessing whether Plaintiffs have met this burden, the district court has a duty to balance the interests of all parties and weigh the damage to each. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009). Whereas Plaintiffs have suffered immense, measurable, and irreparable harm, as discussed above, little harm will be suffered by Defendants, because the TRO would only require Defendants to abide by the Agreement that the Mayfields entered with Turchet.

    **D.**    **An Injunction Is in the Public's Interest**

The final factor, the public interest factor, weighs in favor of a temporary restraining order. The public interest inquiry primarily addresses the impact on nonparties rather than on the parties. It embodies the U.S. Supreme Court's direction that, in exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction. *CTIA - Wireless Ass'n v. City of Berkeley*, 854 F.3d 1105, 1124 (9th Cir. 2017). "[T]he public has an interest in requiring parties to honor their contractual obligations." *Seed Servs., Inc. v. Winsor Grain, Inc.*, 868 F. Supp. 2d 998, 1005 (E.D. Cal., Apr. 11, 2012).

The public interest is being served when the Defendants are asked only to abide by obligations within the Agreement that Mayfield voluntarily entered with Turchet. The Defendants have intentionally and willfully violated the Agreement by hauling horses in California and Oregon using the Mayfield Transport name. Such blatant violations are unjust. And as such, the public has an interest in requiring Defendants to abide by the terms of the Agreement.

### E. Plaintiffs Should Not Be Required to File an Injunction Bond

No injunction bond should be required here, because if this Court grants a temporary restraining order, Defendants will simply be enjoined from conduct that they were not allowed to do under the Agreement. "Federal Rule of Civil Procedure 65(c) invests the district court with discretion as to the amount of security required, if any." *Comet Techs. USA Inc. v. Beuerman*, Case No. 18-CV-01441-LHK, 2018 U.S. Dist. LEXIS 224356, *16 (N.D. Cal., Mar. 15, 2018). The district court may dispense with the filing of a bond under certain circumstances, for example, when it concludes that "there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *2die4kourt v. Hillair Capital Mgmt., LLC*, Case No. SACV 16-0134 JVS(DFMX) 2016 U.S. Dist. LEXIS 118211, *33-34 (C.D. Cal., Aug. 23, 2016). There is no likelihood of harm where a "TRO would simply enjoin Defendant from doing something Defendant never had a right to do in the first place." *Comet Techs.*, 2018 U.S. Dist. LEXIS at *16.

As discussed above, the Agreement has a noncompetition clause that was reaffirmed by the Addendum to the Agreement. Defendants' actions in hauling horses are in direct violation of that clause and are the specific conduct that Plaintiffs seek to enjoin with the temporary restraining order. Therefore, there is no likelihood of harm, and Plaintiffs should not be required to post a bond, because Defendants cannot be harmed by simply being enjoined from hauling horses in California and Oregon and using the "Mayfield Transport" tradename, which is what Mayfield already agreed to and what Turchet paid for in the Agreement.

### V. CONCLUSION

Each of the elements for granting a temporary restraining order is sharply in Plaintiffs' favor, including the strong likelihood that Plaintiffs will succeed on the merits of the breach of contract claim because of myriad evidence of Defendants' breaches of the Agreement, the irreparable harm that

Plaintiffs have and will suffer if Defendants are not enjoined from hauling horses in California and Oregon and using the Mayfield Transport tradename, the balance of equities in Plaintiffs' favor, and the public's interest in ensuring that parties abide by private contracts.  Based on these reasons, Plaintiffs respectfully request that this Court immediately grant a temporary restraining order enjoining Defendants from hauling horses in California and Oregon and using the Mayfield Transport tradename, issue an Order to Show Cause setting a schedule for briefing and a hearing on a preliminary injunction, and not require Plaintiffs to post an injunction bond.

Dated:  February 12, 2020

Respectfully Submitted,
MICLEAN GLEASON LLP

By: ___/s/ *David J. Miclean*_____
    David J. Miclean
    Danielle M. Mihalkanin
    Attorneys for Giselle Turchet and Turchet
    Transport, Inc., dba Mayfield Transport