UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GISELLE TURCHET, et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>RICK MAYFIELD, et al.,<br><br>    Defendants. | Case No. 20-cv-01104-VC<br><br>**ORDER DENYING APPLICATION FOR TEMPORARY RESTRAINING ORDER AND REQUEST FOR ORDER TO SHOW CAUSE**<br><br>Re: Dkt. No. 4 |

  This dispute is between two people who make a living by transporting horses to and from events. The defendant, Rick Mayfield, has long operated a successful horse-hauling business. The plaintiff, Giselle Turchet, began hauling horses for Mayfield's company in 2016. When Mayfield felt ready to retire later that year, Turchet jumped at the opportunity to purchase his company, which is called Mayfield Transport and is based in California. Mayfield, upon selling the company, agreed not to compete with Turchet for horse-hauling clients. But Turchet soon began experiencing problems operating the business. As a result, she sold some of the company's equipment back to Mayfield, and the parties modified the non-compete agreement to allow Mayfield to reenter the field on limited terms.

  Turchet has now filed a lawsuit against Mayfield, his wife, and his new company (which is also called Mayfield Transport but is based in Oregon). Turchet seeks a temporary restraining order that prohibits Mayfield from: (i) hauling horses in California and Oregon; and (ii) using the "Mayfield Transport" name. She also requests an order to show cause why a preliminary injunction should not issue.

  The standards for a temporary restraining order and a preliminary injunction are

"substantially identical." *Stuhlbarg International Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). For either form of preliminary relief, Turchet must establish (1) that she is likely to succeed on the merits, (2) that she is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in her favor, and (4) that a temporary restraining order or injunction is in the public interest. *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

      Turchet brings a variety of claims, but the general thrust of her lawsuit is that Mayfield is violating the non-compete provision that the parties signed upon Turchet's purchase of Mayfield's company. Her TRO application is highly misleading and could well constitute a Rule 11 violation, because it fails to mention the fact that the original agreement was modified. Through the original agreement, Mayfield promised not to "directly or indirectly, engage in or perform for, or permit its name to be used in connection, or carry on, or own any part of, any business similar to the activities, operations, and business involving the assets sold under this Agreement" in California or Oregon. Ex. A, Asset Purchase and Sale Agreement at 5, Dkt. No. 4-3. But in November 2018, once business was not going well for Turchet, Mayfield agreed to repurchase horse-hauling equipment from Turchet to run "under his authority" with billing handled by Turchet Transport, and the parties modified the non-compete provision so that it would apply only to Turchet's "current customers." Ex. B, Addendum to Agreement, Dkt. No. 4-4; *see* Turchet Decl. ¶ 10, Dkt. No. 4-2.

      Turchet also contends that Mayfield is improperly using the "Mayfield Transport" name. The initial sale agreement provided that Turchet purchased "the right to use the name 'Mayfield Transport' until at least December 31, 2021," at which point Mayfield could provide written notice to terminate Turchet's rights in the name. Ex. A, Asset Purchase and Sale Agreement at 4–5. But a note appended to that agreement alters that provision to authorize Turchet to use the "Mayfield Transport" name for only two and a half years (that is, until July 2019). *See* Ex. A, Notes/Changes on Mayfield Transport Purchase. And when Mayfield repurchased the horse-hauling equipment, the tradename provision was also modified. The parties agreed that "Turchet

Transport will be able to have use of 'Mayfield Transport' until 1/2020"—a period that has since lapsed. Ex. B, Addendum to Agreement. In January 2019, Mayfield created Mayfield Transport LLC under Oregon law to facilitate his use of the repurchased equipment. *See* Ex. D, Articles of Organization, Dkt. No. 4-6.[1]

The misleading nature of Turchet's TRO application raises doubts about her ability to succeed on the merits. Indeed, the Court would presumably have discretion to deny preliminary relief based on this conduct alone. But even without considering the merits, and even without penalizing Turchet for her misleading application, it is clear that preliminary relief is not warranted.

Turchet has not established that she is likely to suffer irreparable harm, primarily because damages would almost certainly provide her an adequate remedy. If Mayfield hauls horses in violation of Turchet's contractual rights, the typical remedy is damages, and there's no apparent reason why his revenues from those clients would not fairly compensate Turchet for her injury. Turchet's assertion that she is likely to lose current customers or goodwill—injuries less amenable to after-the-fact damages calculations—is speculative. *See International Franchise Association v. City of Seattle*, 803 F.3d 389, 411–12 (9th Cir. 2015). She points only to the fact that two of Mayfield's clients mistakenly sent her a check because they were confused by the tradenames. Ex. E, Dkt. No. 4-7; Ex. G, Dkt. No. 4-9. Neither has Turchet provided a non-speculative basis to find that Mayfield's current and future clients would otherwise choose her services. In fact, at least two of Mayfield's current clients terminated Turchet because they were dissatisfied with her services, and those clients presumably would not hire her again even if a court order blocks Mayfield from the market. Gerst Decl. ¶¶ 10–11, Dkt. No. 15-2; Ex. 2, Jet Pets Letter.

Nor does the balance of equities favor Turchet. Because she has an adequate damages

---

[1] Turchet states that Mayfield "surreptitiously formed" the LLC. TRO Application at 8. This characterization is dubious in light of the fact that Mayfield sent invoices to Turchet using his entity's name as early as March 2019. *See* Ex. 7, Invoice, Dkt. No. 15-1.

remedy, she would (if she could prevail) be fairly compensated (and her rights fairly protected) even without the requested relief. But if Mayfield is mistakenly enjoined from operating his business, he will forever lose out on revenues from clients he had every right to pursue. This downside risk to Mayfield is underscored by Turchet's request not to file an injunction bond under Federal Rule of Civil Procedure 65(c). *See* TRO Application at 16.

Turchet's delay in pursuing her rights further undermines both her assertion of irreparable harm and her assertion that the balance of equities tips in her favor. *See Oakland Tribune, Inc. v. Chronicle Publishing Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985). Turchet knew no later than August 2019 that Mayfield was hauling horses for clients that she believed were rightfully hers. Turchet Decl. ¶ 17. Moreover, she could have already resolved this dispute by arbitration, as the parties' agreement prescribed. Ex. A, Asset Purchase and Sale Agreement at 6. Although injunctive relief is sometimes available to preserve the status quo pending arbitration, Turchet and Mayfield were poised to put this dispute before an arbitrator in December 2019 before Turchet withdrew from discussions without explanation. Nichani Decl. ¶¶ 2–3, Dkt. No. 15-3. Yet she waited until February 2020 to file this request without adequately explaining why this delay was "prudent rather than dilatory" or strategic. *Arc of California v. Douglas*, 757 F.3d 975, 991 (9th Cir. 2014). And even if Turchet were justified in bypassing arbitration, she had also agreed that if a court action would be filed, the proper forum is San Mateo County Superior Court. Ex. A, Asset Purchase and Sale Agreement at 6. She nonetheless filed in federal court in San Francisco County, which further sharpens the inequity of enjoining Mayfield. *Cf. Atlantic Marine Construction Co. v. U.S. District Court for Western District of Texas*, 571 U.S. 49, 64 (2013). Again, this conduct would presumably be sufficient on its own to warrant denial of preliminary relief.[2]

---

[2] Turchet contends that she is not bound to arbitrate her claims against Mayfield Transport, which was not a party to the agreement. She further contends that Turchet Transport, also not a party to the agreement, is not bound to arbitrate with anyone. At first glance, principles of state law like equitable estoppel would seem to support an order compelling the agreement's signatories to arbitrate with their respective entities. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009). But if Turchet Transport isn't bound by the arbitration agreement, and if

Finally, the requested relief would adversely affect the public interest. The temporary restraining order and preliminary injunction "reaches beyond the parties, carrying with it a potential for public consequences." *Storman, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009). Several horse shows are scheduled in the coming months, and Turchet represents that "there are only a few horse haulers in California and Oregon that operate semi-trucks and can haul large quantities of horses to and from horse shows." TRO Application at 5. The requested relief would force Mayfield's clients to scramble to find new hauling services for their horses—with no assurance that they'd choose Turchet's services to fulfill their needs. And although non-compete agreements are tolerated under narrow circumstances, California has "a settled legislative policy in favor of open competition." *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 946 (2008).

A temporary restraining order is not an appropriate remedy given these considerations. And because the standard for a preliminary injunction is substantially identical, Turchet's request for an order to show cause is likewise denied. A case management conference is scheduled for March 25, 2020, at 10:00 a.m. in San Francisco, Courtroom 4, 17th Floor. A joint case management is due on March 18, 2020.

**IT IS SO ORDERED.**

Dated: March 6, 2020

VINCE CHHABRIA
United States District Judge

---

Mayfield Transport can't invoke the arbitration agreement, it's hard to see why they could sue or be sued based on the overarching contract.